[L.A. No. 31784. Dec. 27, 1983.]

ROBERT K. BALLARD, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Anson & Milberg and Jonathan Milberg for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Richard Zanassi for Respondent.

**OPINION**

**THE COURT.**\*—The Review Department of the State Bar Court has recommended that petitioner Robert K. Ballard be disbarred for numerous acts

---

\*Before Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Richardson, J.†

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

of alleged misconduct. After reviewing the record, this court concludes that disbarment is warranted.

## I.

In eight notices to show cause, petitioner was charged with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068, and 6103), committing acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106), and willfully violating rules 2-101, 2-107, 2-111, 6-101, 7-105, and 8-101 of the Rules of Professional Conduct.[1]

Thirty-four counts of unprofessional conduct were alleged.[2] The State Bar stipulated to dismissal of one of the counts. A second count was dismissed for insufficient evidence. The hearing panel unanimously found the remaining 32 allegations to be true. The review department concurred, with 10 members voting to adopt the panel's findings and 1 member not participating.[3]

## II.

Petitioner was admitted to the practice of law in 1969. He practiced in San Francisco until January of 1974, when he moved to the town of Carson in Los Angeles County and established a practice there.

Since his admission to practice, he has been disciplined on three occasions. In 1971, he was privately reproved for affixing another person's name to several telegrams without permission. In 1978, he received a second private reproval. Petitioner admitted that he failed to discharge the duties of an attorney to the best of his ability. In one of the matters, he also

---

[1] Unless otherwise specified, all references to rules refer to the Rules of Professional Conduct, and all statutory references are to the Business and Professions Code.

[2] The charges were contained in 19 formal counts and 15 investigation-level matters consolidated with the formal counts by stipulation of the parties. Under the stipulation, petitioner expressly waived his rights in connection with the investigation matters to investigation hearings, issuance of formal notices to show cause, and concomitant procedural protections. Counsel for petitioner stated at the hearing in which the stipulation was filed that petitioner intended that the investigation matters be treated for all purposes as though they had been formally charged in notices to show cause. For the purpose of imposing discipline, no distinction need be made between the formal and investigation-level charges. (See rule 405, Rules Proc. of State Bar.)

[3] While the review department adopted all of the panel's findings of misconduct, it declined to adopt two of the findings concerning facts in aggravation. In the first finding, the hearing panel concluded that petitioner did not understand his acts and omissions to be wrong, and that he felt no remorse for his conduct. The second finding concerned petitioner's filing of a chapter 11 bankruptcy proceeding in January of 1982. This was done at a time when many of his clients had claims against him arising out of the charges of unprofessional conduct which were found to be true by the panel.

admitted that he negligently supervised his client's trust account, commingled his personal funds with those of his client, and willfully failed to communicate with his client and to account promptly for funds held in trust. In another matter, he admitted that he willfully failed to perform the services for which he was employed and abandoned his client's cause. In 1979, petitioner was publicly reproved for his willful failure to prosecute a client's action, to keep the client informed as to the status of his case, and to discharge faithfully his duties as an attorney.

The incidents of misconduct with which petitioner is now charged involved 34 clients and took place over a 7-year period from 1976 to 1982. As previously noted, a 3-member panel unanimously found petitioner culpable for 32 of the 34 incidents of misconduct. The panel's findings include violations of numerous provisions of the Rules of Professional Conduct and the Business and Professions Code. These fall into four general categories.

The first category includes instances in which petitioner failed to perform properly the duties for which he was employed. The panel found that petitioner repeatedly failed or refused (1) to communicate with his clients for months or years despite their efforts to contact him; (2) to perform services for which he had been employed; (3) to file an action before the expiration of the statute of limitations; (4) to prosecute a case or make a timely response to a discovery request, resulting in the dismissal of his client's complaint; and (5) to provide a signed substitution of attorney or to turn over a client's file after being requested to do so until after a complaint had been made to the State Bar. This conduct was found to violate rule 6-101(2).[4]

Second, the panel concluded that petitioner violated rule 8-101[5] in his handling of funds held in trust for six individual clients. The panel found

---

[4]Rule 6-101 provides in relevant part: "A member of the State Bar shall not wilfully or habitually . . . [¶] (2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed."

[5]Rule 8-101 provides in relevant part:

"(A) All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled 'Trust Account', 'Client's Funds Account' or words of similar import, . . . and no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith . . . .

" . . . . . . . . . . . . . . . . . .

"(B) A member of the State Bar shall:

"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

" . . . . . . . . . . . . . . . . . .

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member of the State Bar and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the member of the State Bar which the client is entitled to receive."

that petitioner failed (1) to pay trust funds due to each of the six clients promptly upon request; (2) to maintain complete records for and render an accounting to four of the clients; and (3) to notify one client promptly of the receipt of funds.

Third, petitioner was found to have violated rule 2-111(A)(3)[6] and section 6128, subdivision (c)[7] in several matters by refusing to refund the unearned portion of advanced fees upon being discharged or withdrawing from employment.

Finally, the hearing panel found that petitioner violated several miscellaneous disciplinary provisions. Among these was the prohibition against direct solicitation contained in rule 2-101(B).[8] The panel found that petitioner communicated by mail with several medical lien-holders requesting that they assign their liens to petitioner so that he could file actions on their behalf. The actions were to be brought against one of petitioner's former clients and arose from the same proceedings in which petitioner had represented that former client. The panel concluded that the mailings violated petitioner's duties as an attorney under sections 6068, subdivision (e),[9] and 6103.[10]

Petitioner was also found to have violated rule 7-105(1),[11] and section 6068, subdivision (d)[12] by attempting to substitute a client into an action in

---

[6]Rule 2-111(A)(3) provides in relevant part: "A member of the State Bar who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned."

[7]Section 6128 provides in relevant part: "Every attorney is guilty of a misdemeanor who . . . [¶] (c) Wilfully receives any money or allowance for or on account of any money which he has not laid out or become answerable for."

[8]Rule 2-101(B) provides in relevant part: "No solicitation or 'communication' seeking professional employment from a potential client for pecuniary gain shall be delivered by a member or a member's agent in person or by telephone to the potential client, nor shall a solicitation or 'communication' specifically directed to a particular potential client regarding that potential client's particular case or matter and seeking professional employment for pecuniary gain be delivered by any other means, unless the solicitation or 'communication' is protected from abridgment by the Constitution of the United States or by the Constitution of the State of California."

[9]Section 6068 provides in relevant part: "It is the duty of an attorney . . . [¶] (e) To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client."

[10]Section 6103 provides in relevant part: "[A]ny violation of the oath taken by him, or of his duties as [an] attorney, constitute[s] cause[] for disbarment or suspension."

[11]Rule 7-105 provides in relevant part: "In presenting a matter to a tribunal, a member of the State Bar shall: [¶] (1) Employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and shall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of fact or law."

[12]Section 6068 provides in relevant part: "It is the duty of an attorney: . . . [¶] (d) To employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

propria persona solely to enable petitioner to avoid a court-ordered appearance at a settlement conference. A criminal contempt judgment entered against petitioner based on this conduct was entered in evidence as a State Bar exhibit.

The State Bar presented to the hearing panel the testimony of five of petitioner's former clients and two attorneys who had replaced petitioner as counsel. Petitioner presented the testimony of Dr. Elliot Markoff, a psychiatrist who had examined petitioner on five occasions. Petitioner also testified in his own behalf. Both parties presented extensive documentary evidence.

Petitioner stipulated to the facts of his misconduct in most of the matters.[13] He disputes here only the findings relating to one of the thirty-two counts—the "Bucio matter." In that matter, the hearing panel found that petitioner violated section 6103[14] based on a stipulation regarding the facts about which Ms. Bucio, his former client, would testify.

According to the stipulated testimony, Ms. Bucio retained petitioner in January of 1981 in connection with a personal injury matter arising from an automobile accident. Petitioner took Ms. Bucio's car to be repaired, but she was dissatisfied with the quality of the repairs. Petitioner told Ms. Bucio that he would arrange for further repair work, and he provided her with a temporary replacement.

Approximately one month later, Ms. Bucio telephoned petitioner to ask him about the whereabouts of her car. Petitioner told her that the car was still being repaired. One or two months later, Ms. Bucio was notified by her insurance carrier that her car had been involved in a second accident.

---

[13]Evidence had already been presented on four of the formally charged counts before the parties agreed to stipulate to certain facts. Accordingly, no stipulation was entered as to those counts.

Of the remaining charges, petitioner stipulated to both the facts and the wilfullness of his misconduct in all but four of the matters. One matter involved allegations that petitioner failed to communicate with a client and to provide a signed substitution of attorney upon request. The stipulation recited the facts supporting the allegations but did not include an express finding of misconduct. The second matter involved the allegation set forth above that petitioner improperly attempted to substitute a client into an action in propria persona. Petitioner stipulated only that certain facts would be testified to by the client. Petitioner, himself, later testified regarding the incident. His testimony did not contradict the client's stipulated testimony or the panel's finding that petitioner willfully conspired to defraud the court in that incident. The third matter involved an allegation that petitioner had failed for 18 months to inform 2 clients that, contrary to their belief, he had not filed an appeal on their behalf. The parties stipulated that petitioner would testify that he had in fact informed the clients that he did not intend to file an appeal.

The fourth matter, which the hearing panel termed "the Bucio matter," is discussed in the text of this opinion, *post*.

[14]See *ante*, footnote 10.

When Ms. Bucio informed petitioner of this, he told her that the car could not possibly have been in another accident as it was still undergoing repairs in the shop.

When Ms. Bucio went to the garage where petitioner said he had taken her car, she was advised that the car had been released to petitioner several months earlier, prior to the second accident. In May of 1981, petitioner acknowledged to Ms. Bucio that her car had indeed been involved in a second accident. He agreed to take care of the matter and arranged for another replacement rental car. However, petitioner never repaired Ms. Bucio's car and he subsequently refused to pay for the rental car.

Ms. Bucio's insurance carrier refused to provide coverage for the second accident because her policy had lapsed sometime after the first accident. A civil judgment was entered against Ms. Bucio, as the legal owner of the car, in litigation arising out of the second accident. Petitioner did not represent Ms. Bucio's interests in that litigation.

Ms. Bucio's car, which was a "total loss," was eventually found behind petitioner's office by counsel later hired to represent her in the original personal injury matter.

Petitioner stipulated to the testimony that Ms. Bucio would give, but did not stipulate to the truth of her testimony or to a finding of misconduct. Petitioner denies that he converted Ms. Bucio's car to his own use or that he was personally involved in the second accident. He asserts that he was not responsible for the second accident and that the car was under the control of the repair shop when the accident occurred.

Petitioner offered to testify that he had been told by people in the repair shop that the second accident occurred while a driver from the shop was returning the car to Ms. Bucio. Apparently unpersuaded by the proffered testimony, the panel found that petitioner "willfully made material misrepresentations to the client, which he knew to be false, incurred interests contrary to those of his client's [*sic*] without advising her of same, and made use of the client's automobile without her permission or consent."

### III.

Petitioner makes three principal contentions. First, he contends that the loss or destruction by the State Bar of one of his exhibits—a standardized written psychological test completed by petitioner—requires that the disciplinary proceeding be remanded to permit him to present new test evidence. Second, he argues that the disciplinary proceedings should be abated and

this case remanded to the State Bar's investigation department with instructions to investigate whether grounds exist for inactive status proceedings under section 6007.[15] That section requires that a member of the State Bar be enrolled as an inactive member if the Board of Governors finds that, due to mental infirmity or mental illness, the member is "unable or habitually fails to perform his duties or undertakings competently" or is "unable to practice law without danger to the interests of his clients and the public." Finally, petitioner argues that even if the disciplinary proceeding is not abated, his mental condition and other mitigating factors make suspension rather than disbarment the appropriate discipline.

*The Loss of Petitioner's Exhibit*

Petitioner argues that the State Bar's loss of one of his exhibits—a Minnesota multiphasic personality inventory administered to petitioner in October of 1981—requires that the disciplinary proceedings be remanded to permit him to present new psychological test evidence. He contends that the lost exhibit provides an important link in his argument for the institution of section 6007 proceedings. Also, it is central to his alternative argument for the imposition of suspension rather than disbarment. He contends that the lost test was relied upon by Dr. Markoff both in preparing his written psychiatric report and in his testimony. The unavailability of the test, he claims, denies him effective review by this court.

While the loss of the exhibit is regrettable, several considerations suggest that it does not justify remanding these proceedings to permit petitioner to present "substitute" test results or testimony. First, a review of Dr. Markoff's written report and his testimony reveals that the psychiatrist relied primarily on the five examinations of petitioner he conducted, rather than on the results of the missing test, in reaching his diagnosis of petitioner's condition. Dr. Markoff testified that the test merely corroborated the conclusions he had already reached on the basis of his own examinations.

---

[15]Section 6007 provides in relevant part: "(b) . . . [T]he board shall enroll a member of the State Bar as an inactive member if, after notice and opportunity to be heard before the board or a committee, the board finds that the member, because of mental infirmity or illness, or because of addiction to intoxicants or drugs, is (1) unable or habitually fails to perform his duties or undertakings competently, or is (2) unable to practice law without danger to the interests of his clients and the public. No proceeding pursuant to this subdivision shall be instituted unless the board or a committee finds, after preliminary investigation, or during the course of a disciplinary proceeding, that probable cause exists therefor.

"In the case of an enrollment pursuant to this subdivision (b) the board shall terminate the enrollment upon proof that the facts found as to the member's disability no longer exist; and, on payment of all fees required.

"(c) The pendency or determination of a proceeding or investigation provided for by this section shall not abate or terminate a disciplinary investigation or proceeding except as required by the facts and law in a particular case."

Second, Dr. Markoff read into the record the conclusions drawn from petitioner's test results by a psychologist, apparently employed by the service that administered the test, regarding the nature of petitioner's personality disorder. Thus, the record reflects both the psychologist's interpretation of the test results and Dr. Markoff's extensive testimony describing the nature, purpose, and reliability of the test, as well as his own interpretation of the results. It does not appear that either the missing test or a newly administered version of the test would significantly affect this court's determination of the issues before it.

Finally, the test appears to have had little if any bearing on Dr. Markoff's assessment of the prospects for successful psychotherapy in petitioner's case. Since that issue is the key to determining whether disbarment or suspension is appropriate (*post,* pp. 288-289), neither the original nor any new test results would be likely to affect the discipline imposed.

*Abatement for Inactive Status Proceedings*

Petitioner contends that the disciplinary proceedings should be abated, pursuant to section 6007, subdivision (c), and that the State Bar should be ordered to investigate whether probable cause exists to institute an inactive status proceeding under section 6007, subdivision (b). In support of this contention, he points to his own testimony and to that of his psychiatrist, Dr. Markoff. That testimony suggested that petitioner's misconduct was attributable to long-term stress and emotional disorders, and that continuing emotional problems adversely affect his competence to practice law.[16] Petitioner argues that, rather than being disbarred or suspended, he should be enrolled as an inactive member until he can prove that his disability no longer exists.

The requirements of section 6007, subdivisions (b) and (c) were recently addressed by this court in *Newton* v. *State Bar* (1983) 33 Cal.3d 480 [189 Cal.Rptr. 372, 658 P.2d 735]. In *Newton,* the hearing panel found Newton culpable on six counts of professional misconduct and recommended that he be suspended from the practice of law. As the record in *Newton* reveals, the review department, on the basis of Newton's written submissions and oral argument in a review department meeting, found that Newton was unable to assist in his defense of the disciplinary charges. Accordingly, it abated the disciplinary proceedings pursuant to rule 644 of

---

[16]Dr. Markoff testified that, after examining petitioner on five separate occasions, he diagnosed him as having a chronic, long-standing personality disorder referred to as a "paranoid personality." Dr. Markoff outlined the ways in which he felt this disorder accounted for petitioner's past misconduct and would continue to interfere seriously with his ability to practice law.

the Rules of Procedure of the State Bar.[17] The review department also recommended that a formal investigation be conducted to determine whether probable cause existed to initiate inactive status proceedings under section 6007, subdivision (b).[18]

An examiner from the State Bar investigation department conducted a one-hour interview with Newton, but did not review the transcript of the disciplinary proceeding. Relying solely upon the interview, the examiner found insufficient cause to institute section 6007 proceedings and recommended that the disciplinary proceedings be resumed. (*Id.,* 33 Cal.3d at p. 483.)

The review department adopted the examiner's finding that there was no probable cause to institute a proceeding under section 6007, subdivision (b) and no such proceeding was conducted. Without making a finding that Newton's mental condition no longer made him unable to assist in his defense, the review department also terminated the abatement and resumed the disciplinary proceeding. At the conclusion of that proceeding, it recommended that Newton be suspended.

Concluding that the State Bar had proceeded incorrectly, this court declined to impose the recommended discipline. It was determined that Newton's written submissions and oral argument in this court "amply confirmed" the serious questions raised by the record regarding the effect of Newton's mental condition on his ability to assist in his own defense.[19]

---

[17]Rule 644 of the Rules of Procedure of the State Bar provides: "The pendency of an investigation or formal proceeding pursuant to [section 6007, subdivision (b)] does not abate a disciplinary investigation or formal proceeding, unless the State Bar Court determines that the member, because of the disability or alleged disability, is unable to assist in the defense of the disciplinary investigation or formal proceeding."

The Rules of Procedure of the State Bar were promulgated by the State Bar Board of Governors pursuant to authorization granted in section 6086.

[18]A finding of probable cause is required by the penultimate sentence of subdivision (b), which provides that "No proceeding pursuant to this subdivision shall be instituted unless the board or a committee finds, after preliminary investigation, or during the course of a disciplinary proceeding, that probable cause exists therefor."

[19]In *Newton,* this court did not expressly state that its abatement order was based solely on Newton's inability to assist in his own defense. However, it is clear from a review of the record in that case that inability to assist in the defense was the sole basis of the order. As noted previously, the record in *Newton* reveals that the review department expressly based its abatement order on rule 644 of the Rules of Procedure of the State Bar and on a finding that Newton was unable to assist in the defense of the disciplinary proceeding. This court approved the review department's action, agreeing that the record raised "serious questions regarding Newton's mental condition." (33 Cal.3d at p. 484.) Thus, this court agreed that the abatement had been ordered on the proper grounds. It was the review department's subsequent termination of the abatement that was erroneous. The review department's initial determination was "amply confirmed by the nature of petitioner's written submissions and oral argument in this court . . . ." Therefore, this court ordered the disciplinary proceeding abated for a second time. (*Ibid.*) It is evident that this court's abatement order was based solely upon Newton's inability to assist in his own defense.

Accordingly, the disciplinary proceeding was abated pursuant to section 6007, subdivision (c). In addition, this court made its own finding of probable cause and ordered the State Bar to institute proceedings under section 6007, subdivision (b). (*Id.*, at p. 484.)[20]

Relying upon *Newton,* petitioner requests this court to order the State Bar to conduct a formal section 6007, subdivision (b) probable cause investigation. Pending the outcome of that inquiry, he seeks an order abating the disciplinary proceeding.

It is clear in light of *Newton* that petitioner would not be entitled to the requested abatement even if this court were to order a probable cause investigation. As *Newton* demonstrated, the pendency of a probable cause investigation or formal proceeding under section 6007, subdivision (b) will abate a disciplinary proceeding if, and only if, the State Bar Court or this court determines that, due to mental illness,[21] the attorney is unable to assist in the defense of the disciplinary proceeding. (Rule 644, Rules Proc. of State Bar; § 6007, subd. (c).)

Unlike *Newton,* petitioner does not argue that his alleged mental illness has adversely affected his ability to assist in the defense of this disciplinary proceeding. Nor would the record support such a contention.[22] Accordingly, abatement of the disciplinary proceeding would not be proper even if a formal probable cause investigation were ordered.[23]

---

[20]In dictum, the *Newton* opinion implied that the disciplinary proceeding would ultimately be abandoned only if it were found in the section 6007 proceeding that Newton's mental problems "contributed" to the misconduct with which he was charged. (*Id.*, at p. 484, fn. 3.) Of course, termination of a disciplinary proceeding would only be appropriate if it were found that the attorney's mental illness rendered him or her unable to form the intent that is an element of the offenses charged. (See *Hyland* v. *State Bar* (1963) 59 Cal.2d 765, 774 [31 Cal.Rptr. 329, 382 P.2d 369].)

[21]Abatement is also permitted if the attorney's inability to assist in the defense is attributable to addiction to drugs or intoxicants. (Rule 644, Rules Proc. of State Bar; section 6007, subd. (b).) Such addiction is not at issue in this case.

[22]Inability to assist in the defense should be distinguished from inability to practice competently and without endangering clients or the public. The former suggests a more serious form or degree of mental illness than the latter. Accordingly, facts sufficient to support a finding of probable cause to institute inactive status proceedings under section 6007, subdivision (b) may not be sufficient to support abatement of a disciplinary proceeding.

It may well be an abuse of discretion rising to the level of a violation of due process for the State Bar to fail to abate a disciplinary proceeding when presented with substantial indications that an attorney is incompetent to assist in the defense of the proceeding. Petitioner does not allege, and the record does not suggest, any question of such incompetence in this case. Therefore, it is unnecessary to determine the circumstances under which the failure to abate a disciplinary proceeding would constitute an abuse of discretion.

[23]Abatement would be available under appropriate circumstances whether or not section 6007 proceedings were under consideration. Rule 351 of the Rules of Procedure of the State Bar prohibits the State Bar from going forward with a disciplinary proceeding against an attorney who has been "judicially declared to be of unsound mind or, on account of mental condition, incapable of managing his or her affairs until a judicial determination has been made to the contrary."

Petitioner's contention that the State Bar should have formally investigated whether there was sufficient cause to institute proceedings under section 6007, subdivision (b) presents a separate, but related, issue not resolved by *Newton*. *Newton* addressed only the proper scope of a formal investigation into the propriety of initiating inactive status proceedings once the State Bar has decided that such an investigation is necessary. It did not examine whether section 6007 imposes a duty on the State Bar to conduct such an investigation in the first instance.

In this case, the State Bar, prior to instituting the disciplinary proceeding, considered the section 6007 alternative. However, the investigation department, the department of trial counsel, the hearing panel, and the review department all saw insufficient indication of mental illness on the part of petitioner to warrant conducting a formal probable cause inquiry before rejecting the section 6007 route.[24] Thus, no formal inquiry was conducted.

 Section 6007, subdivision (b) does not require the State Bar in every disciplinary case to conduct a formal investigation to determine whether probable cause exists to institute an inactive status proceeding. The statute simply prohibits the State Bar from instituting such a proceeding without first finding that there is probable cause to do so. If the State Bar decides that a formal probable cause investigation is warranted, *Newton* requires that the investigation include a review of the transcript of the disciplinary proceeding. The State Bar is not *required* to conduct such an investigation, however, either in response to a request by the attorney facing disciplinary charges[25] or on its own initiative. The decision is left to the discretion of the State Bar. That discretion was not abused in this case.

---

[24]After the hearing panel issued its proposed decision, but before the review department hearing, the review department's assistant presiding referee, the State Bar's trial counsel, and petitioner's attorney participated in a telephone conference. During that conference, the assistant presiding referee asked the State Bar attorney why she had not elected to institute a section 6007 proceeding rather than a disciplinary proceeding. The State Bar attorney stated that the investigation department had considered, but rejected, that alternative. The assistant presiding referee was apparently satisfied that the State Bar attorney had acted properly.

Petitioner does not allege that he expressed any interest in a section 6007 proceeding at the time of the telephone conference, even though the conference took place after he had presented the psychiatric testimony which he now contends should have triggered such a proceeding. The argument that a section 6007 proceeding should have been instituted was first raised by petitioner in his petition for hearing in this court.

[25]The Rules of Procedure of the State Bar suggest that a proceeding to place a member of the State Bar on inactive status pursuant to section 6007, subdivision (b) may be instituted at the request of the member. (Rule 2.28, Rules Proc. of State Bar.) However, nothing in rule 2.28 makes initiation of inactive status proceedings mandatory. Nor does a member's request for inactive status proceedings eliminate the requirement that the State Bar make a finding of probable cause before such a proceeding is instituted (§ 6007, subd. (b)). To interpret rule 2.28 as eliminating the probable cause requirement whenever a member makes

If the State Bar had conducted a formal inquiry at the time advocated by petitioner and had made a finding of probable cause and instituted a section 6007, subdivision (b) proceeding, there would still have been no basis for abating the disciplinary proceeding since petitioner was competent to assist in his defense. (Rule 644, Rules Proc. of State Bar.) The State Bar would have had to conduct parallel proceedings. Petitioner would have been entitled to have the disciplinary proceeding terminated as a result of the section 6007 proceeding only if that proceeding had been concluded first, and only if it had been found in that proceeding that petitioner, due to mental illness, had been unable at the time of the charged offenses to form the requisite culpable intent.[26] (See *Hyland* v. *State Bar, supra,* 59 Cal.2d at p. 774; cf. *Newton* v. *State Bar, supra,* 33 Cal.3d at p. 484, fn. 3.)

Petitioner contends only that his alleged mental illness is a mitigating factor, not that it rendered him unable to form the intent that is an element of the various offenses with which he is charged. Thus, in no event could petitioner have avoided the imposition of discipline in this proceeding.

Accordingly, petitioner is entitled to neither an abatement of the disciplinary proceeding nor a section 6007, subdivision (b) probable cause investigation.

*Mitigation*

Finally, petitioner contends that his mental condition makes suspension rather than disbarment the appropriate discipline. He proposes that a five-year suspension be imposed, with actual suspension for three years. The conditions of the suspension he envisions would include a requirement that he engage in long-term psychotherapy. Also, he would be required to turn his practice over to a licensed attorney and to work for that attorney as a paralegal to reform his office procedures and accounting practices. Prior to the commencement of any actual suspension, petitioner would be required

---

such a request would do violence to the unambiguous language of section 6007, subdivision (b). It would also permit any member facing disciplinary proceedings to compel the State Bar to conduct a costly and time-consuming parallel proceeding, while continuing with the disciplinary proceeding, whether or not there was any evidence that the member suffered the sort of disability for which inactive status is provided.

As noted above, petitioner made no request to the State Bar for inactive status proceedings, and raises the issue for the first time before this court.

[26]A section 6007 proceeding would focus upon petitioner's then-current mental condition to determine whether he was, at the time of the proceeding, able to practice law competently and without danger to the interests of his clients and the public. While petitioner's mental condition at the time of the charged prior acts of alleged professional misconduct might be relevant in making that determination, it would not be directly at issue. Ideally, the issue of an attorney's inability at the time of the charged offenses to form the requisite culpable intent should be litigated in the disciplinary proceeding, not in a section 6007 proceeding.

to take whatever steps the State Bar might direct to remedy the harm caused by his misconduct.

Petitioner contends that this lesser discipline is appropriate because the evidence clearly establishes (1) that long-term stress and emotional disorders were the cause of his misconduct, and (2) that the prognosis for successful treatment of his condition is promising.

█ Evidence that an attorney's professional misconduct was caused by mental illness may provide the basis for an election by the State Bar to forego or abate disciplinary proceedings and instead institute inactive status proceedings. (See *ante,* pp. 286-289.) If section 6007 proceedings are not considered appropriate, however, the State Bar may proceed with disciplinary proceedings.

In the disciplinary context, evidence of mental illness has a different significance than it does when the propriety of mental fitness proceedings is under consideration. In the former context, such evidence is not a mitigating factor which will justify or exonerate an attorney from bearing the responsibility for his professional misconduct. (*Snyder* v. *State Bar* (1976) 18 Cal.3d 286, 293 [133 Cal.Rptr. 864, 555 P.2d 1104].) An attorney's psychiatric condition has been considered in determining whether lesser discipline than disbarment is appropriate, but only if successful therapeutic rehabilitation or a strong prognosis for future rehabilitation is established. (See, e.g., *In re Cohen* (1974) 11 Cal.3d 935, 939, 944 [114 Cal.Rptr. 611, 523 P.2d 651]; *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) This is consistent with the nonpunitive, protective purpose of State Bar disciplinary proceedings. (See *Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 748.)

Petitioner asserts that Dr. Markoff concluded that the prospects were good for elimination of the problems that had caused petitioner's misconduct if petitioner were to undertake three to five years of intensive psychotherapy. However, petitioner's characterization of Dr. Markoff's conclusions is not supported by the record. In his written psychiatric report, Dr. Markoff observed that petitioner was a "difficult candidate" for psychotherapy. Dr. Markoff recommended that a psychotherapeutic effort be made to treat petitioner since "some individuals with this personality disorder can be helped and can be modified . . . ." However, he also testified that petitioner represented "a very difficult treatment problem" because the personality disorder he exhibited "is by its nature very difficult to work with psychotherapeutically." In light of this testimony, it does not appear that a sufficiently strong likelihood of petitioner's rehabilitation exists to justify a rejection of the State Bar's recommendation of disbarment.

Petitioner also urges several additional mitigating factors. He points out that he cooperated with the State Bar in these disciplinary proceedings, expressed his sincere remorse for his actions, and has made restitution of unearned fees and funds held in trust to most of the affected clients. Petitioner contends that nearly all of his acts of misconduct reflected negligence rather than any intention to harm his clients. He also asserts that his status as a small-town, sole practitioner should be viewed as a mitigating factor. Finally, he notes that trial counsel for the State Bar agreed that suspension rather than disbarment was appropriate.[27] He urges that the examiner's opinion should be accorded great weight in this court's review.

Petitioner's cooperation with the State Bar in this proceeding and his expressions of remorse are commendable. However, none of the other factors he urges in mitigation are persuasive. In this case, petitioner's restitution of funds owed to clients is entitled to no weight. In some instances, petitioner did not return the funds he wrongfully withheld until he had been informed that his clients had complained to the State Bar. ■ "[R]estitution made only under the pressure of a forthcoming disciplinary investigation is entitled to no weight as a mitigating circumstance." (*Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 24 [184 Cal.Rptr. 720, 648 P.2d 942].) In other instances, petitioner made restitution only months after he had been served with notices to show cause and after the proceedings against him had begun. Only prompt restitution after complaint but before proceedings begin may be considered in mitigation. (*Ibid.*; *Bradpiece* v. *State Bar, supra,* 10 Cal.3d at p. 748.)

Nor is the fact that an attorney is a small-town, sole practitioner generally regarded as a mitigating factor. (See *Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) Petitioner has not established any basis on which the nature or location of his practice should influence the discipline imposed.

In addition, the contention that petitioner's acts were merely negligent is contradicted by the well-supported findings of willfulness in the vast majority of the allegations of misconduct found to be true by the hearing panel. Indeed, petitioner stipulated to most of those findings.

Finally, the State Bar trial counsel's recommendation of suspension was based primarily on the psychiatric evidence indicating that petitioner was in

---

[27]The State Bar trial counsel recommended five years of actual suspension, followed by a period of probation during which petitioner would be required to make quarterly reports to the State Bar. The recommendation of suspension was made subject to the conditions that petitioner seek psychiatric treatment and that he not be permitted to resume the practice of law until the treating psychiatrist certified that he was competent to do so.

need of long-term psychotherapy. Were it not for the presence of that factor and petitioner's cooperation with the State Bar, the trial counsel stated that she would have recommended that petitioner be disbarred.

"The purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the attorney to continue in that capacity for the protection of the public, the courts, and the legal profession." (*Bradpiece v. State Bar, supra,* 10 Cal.3d at p. 748.) Thus, the relevant inquiry in evaluating evidence of mental condition is whether that condition is sufficiently amenable to treatment so that there is a likelihood of successful rehabilitation. Petitioner has not established that such a likelihood exists.

Furthermore, both the hearing panel and the review board considered the psychiatric evidence offered by petitioner, and were nonetheless unanimous in recommending disbarment. Their recommendations are entitled to great weight. (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]; *In re Cohen, supra,* 11 Cal.3d at p. 944.)

## IV.

"This court must independently examine the record, reweigh the evidence and pass on its sufficiency in State Bar disciplinary matters. [Citations.]" (*Codiga* v. *State Bar, supra,* 20 Cal.3d at p. 796.) The State Bar must establish a charge of unprofessional conduct by convincing proof and to a reasonable certainty. (*Skelly* v. *State Bar* (1973) 9 Cal.3d 502, 508 [108 Cal.Rptr. 6, 509 P.2d 950].) All reasonable doubts are resolved in favor of the attorney. (*Ibid.*) "The burden, however, is on the petitioner to show that the findings are not supported by the evidence. [Citation.]" (*Bluestein* v. *State Bar* (1974) 13 Cal.3d 162, 168 [118 Cal.Rptr. 175, 529 P.2d 599, 91 A.L.R.3d 570].)

An independent review of the record in this case reveals that petitioner stipulated to the facts and admitted the willfulness of his misconduct in most of the 32 matters charged. There is convincing proof of the truth of the remaining charges with one exception. Further, petitioner does not challenge the State Bar's findings of culpability as to those matters.

In the one remaining matter—the Bucio case—petitioner does challenge the findings of fact. His contentions regarding that matter are set forth at length above. (See *ante,* pp. 281-282.) The record relating to the Bucio charge consists of the stipulated testimony of a complaining witness whose demeanor the hearing panel was not in a position to judge, and a conflicting offer of proof by petitioner. It is not necessary to decide whether that evidence was sufficient to support the findings, since petitioner's misconduct

in the remaining 31 matters amply warrants imposition of the recommended discipline.

Petitioner's acts and omissions to act in 31 matters, many of which seriously jeopardized the interests of his clients, constitute willful professional misconduct and involve moral turpitude. (See *In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465] [discipline warranted for conduct involving moral turpitude].) Disbarment has been ordered for comparable misconduct particularly where a history of prior discipline is present. (See, e.g., *Marcus* v. *State Bar* (1980) 27 Cal.3d 199 [165 Cal.Rptr. 121, 611 P.2d 462] [disbarment ordered for habitual disregard of interests of clients, failure to communicate with clients and return unearned fees, where attorney had a record of prior discipline for 12 similar acts of misconduct]; *Grove* v. *State Bar* (1967) 66 Cal.2d 680 [58 Cal.Rptr. 564, 427 P.2d 164] [disbarment ordered for habitual refusal to communicate with clients or perform services after accepting fees]; cf. *Cain* v. *State Bar* (1979) 25 Cal.3d 956 [160 Cal.Rptr. 362, 603 P.2d 464]; *Ridley* v. *State Bar* (1972) 6 Cal.3d 551 [99 Cal.Rptr. 873, 493 P.2d 105].)

Petitioner's multiple violations of his oath and duties as an attorney clearly warrant severe discipline. The three prior instances in which petitioner has been disciplined for similar professional misconduct provide further support for the conclusion that the protection of the public, the courts, and the profession require that he be prevented from engaging in the practice of law.

The words of this court in *Grove* v. *State Bar, supra,* 66 Cal.2d at page 685 are equally appropriate here: "While we sympathize with petitioner's psychological difficulties and commend him on his frankness in recognizing his problems, we cannot find that the psychiatric report states any grounds for excusing him from observation of at least the minimum standards of professional conduct. We realize that in many cases psychoneurotic problems may underlie professional misconduct and moral turpitude. In this area our duty lies in the assurance that the public will be protected in the performance of the high duties of the attorney rather than in an analysis of the reasons for his delinquency. Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise, for the attorney's failure to do so."

The clear and uncontradicted evidence of serious professional misconduct in all but 1 of the 32 counts, adversely affecting more than 30 clients and spanning a 7-year period, amply supports the State Bar's recommendation of disbarment in this case.

## V.

Accordingly, it is ordered that Robert K. Ballard be disbarred from the practice of law and that his name be stricken from the roll of attorneys. It is also ordered that he comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.