[L.A. No. 31914. Nov. 5, 1984.]

In re REGIS MICHAEL POSSINO on Disbarment.

**COUNSEL**

Theodore A. Cohen for Petitioner.

Herbert M. Rosenthal and Truitt A. Richey, Jr., for Respondent.

**OPINION**

**THE COURT.**—This court reviews and adopts a recommendation of the State Bar that petitioner Regis Michael Possino be disbarred following his conviction of a crime involving moral turpitude. (Bus. & Prof. Code, §§ 6101, 6102; Cal. Rules of Court, rule 951.)[1]

Petitioner was admitted to practice in 1972. He was privately reproved in 1976 for wrongfully causing an employee to make a false notarial declaration. The present proceeding arises from his 1978 conviction for offering to sell marijuana. (Health & Saf. Code, § 11360.) Following this conviction,

---

[1]All statutory references are to the Business and Professions Code unless otherwise noted.

the superior court placed petitioner on probation for five years with various conditions of probation including confinement in county jail for one year. That judgment was affirmed on appeal on June 18, 1979.

In November 1978, following the superior court's probation order, this court referred the matter to the State Bar for a hearing and report on whether the facts surrounding the marijuana offense involved moral turpitude or other misconduct warranting discipline and, if so, for recommendation as to the discipline to be imposed. (Cal. Rules of Court, rule 951(c).) No interim suspension was ordered. (See § 6102, subd. (a).)

Based on stipulated facts and on testimonial evidence, the hearing panel found that the circumstances of the offense involved moral turpitude. Disbarment was recommended. The review department unanimously adopted the hearing panel's findings of fact. However, it adopted the panel's recommendation of disbarment by a divided vote. Three of the eight members recommended suspension for five years, to be stayed on conditions including four years' actual suspension.

The facts giving rise to the Health and Safety Code section 11360 conviction arose from petitioner's attempt during November and December of 1975 to sell 350 pounds of marijuana to undercover Los Angeles police officers. In November of that year, petitioner offered to sell 1,000 pounds to the officers, but the officers indicated interest in only a lesser amount. At several meetings over the next few weeks, petitioner negotiated the terms of the sale, delivered samples of the "merchandise," and calculated that his profit on the sale of 350 pounds of marijuana would be $38,500.

In the course of the marijuana negotiations, petitioner also sought to purchase cocaine from the undercover officers. He told the officers that he was an attorney and was acting on behalf of several groups who could purchase 8 to 10 kilograms of cocaine twice a month at a price of $34,000 per kilo. However, these negotiations ended when one of the undercover officers said he would not be able to obtain any cocaine until Christmas.

Additionally, at one of the meetings petitioner offered to sell the undercover officers $5 million worth of stolen treasury bills or bearer bonds. At a subsequent meeting, the officers brought along an undercover agent of the United States Treasury Department, introducing him as a cousin of one of the undercover narcotics officers and a dealer in stolen securities. Petitioner and the agent negotiated a purchase price of 20 percent of the face value for the securities. However, petitioner never delivered the securities. He later informed the agent that he had negotiated a better price with another buyer, and cancelled the transaction.

During these negotiations, petitioner represented himself as an attorney and produced identification as a deputy or former deputy of the Los Angeles District Attorney's office. He was in fact a former deputy of that office.

Petitioner was arrested on December 23, 1975, while attempting to deliver the first shipment of 50 pounds of marijuana to the undercover officers. He was charged with three counts of violating Health and Safety Code section 11360 and one count of violating Health and Safety Code section 11359 (possession of marijuana for sale). He was released on his own recognizance pending trial. The trial was held in late 1977 and resulted in a conviction for one count of violating Health and Safety Code section 11360.

One evening during the trial, petitioner encountered one of the trial jurors as she was waiting for a table in a restaurant. He approached her, initiated a conversation, and bought drinks for her and her companions. Although they did not discuss the merits of the case, petitioner asked the juror what she thought of the prosecutor. He also talked to her about himself, other persons involved in the trial, and the judge. Learning that the juror was a religious person, petitioner discussed his own religious beliefs with her. The conversation ended when the juror and her friends were called to dinner.

After the juror finished dinner, she approached petitioner and said she was upset about their conversation, which she believed was improper. Petitioner said that whatever she did about it would be "all right" with him. She subsequently reported the conversation to the trial judge. Thereafter, she was excused from the jury.

The judge stated that petitioner's conduct amounted to contempt of court, and that petitioner had indirectly attempted to influence the juror and had violated his ethical obligations as an attorney. The judge revoked petitioner's own recognizance release and remanded him to custody for the remainder of the trial. A transcript of the juror's testimony concerning the restaurant conversation was sent by the judge to the State Bar for possible discipline.

The hearing panel noted in mitigation that petitioner was only 27 years old at the time of his arrest. He was not engaged in full-time legal practice but instead was doing legal research and making minor court appearances for other attorneys. He ceased practicing law altogether during 1976 and 1977, and again from April 1980 through April 1981. In 1979 and 1980, he performed free legal services for the Los Angeles Free Clinic and participated in the State Bar's "Volunteers in Parole Program." The panel also

found that petitioner sought psychological evaluation and counselling during the two years following his arrest.[2]

## I.

Petitioner's sole contention is that the recommended discipline is excessive. He notes correctly that the purpose of a disciplinary proceeding is not to punish but to ascertain an attorney's present fitness to practice law and to inquire into the need to protect the public, the courts and the legal profession. (*In re Conflenti* (1981) 29 Cal.3d 120, 123 [172 Cal.Rptr. 203, 624 P.2d 253].) He argues that in his case such protection can be achieved through a lesser discipline than disbarment.

■ Absent mitigating circumstances, conviction of a felony involving moral turpitude may justify disbarment. (§ 6102, subd. (b).)[3] ■ Petitioner bears the burden of demonstrating that the State Bar's recommendation, made with the objective of protecting the public, is erroneous. (*In re Conflenti, supra,* 29 Cal.3d at p. 124.)

On several occasions, discipline short of disbarment has been imposed on attorneys who were involved in illegal drug transactions. However, a review of these cases reveals the existence of mitigating factors not present here.

---

[2]The hearing panel's decision is unclear as to whether the mitigating facts it recites were found to be true. As petitioner did not testify or present any witnesses before the hearing panel, this recitation is drawn entirely from a stipulation. This stipulation recited that "[i]f called as a witness herein, [petitioner] would testify as follows with reference to mitigating circumstances of the acts underlying his conviction . . . ." The panel's findings recite only that "[t]he following facts were submitted by [petitioner] in mitigation . . . ." Thus, the recitation does not make it clear whether the panel adopted the proffered facts as true.

However, the panel did delete several of the mitigating circumstances which petitioner had proffered in the stipulation. The panel deleted the assertion that petitioner had "acknowledged the responsibilities of his actions," as well as the somewhat inconsistent assertion that at the time of the negotiations with the undercover officers, petitioner exaggerated his ability to purchase and sell the various items of contraband discussed in those negotiations. The panel also deleted the assertions that petitioner's acts were entirely unrelated to the practice of law, and that his capacity as an attorney did not "enter into the situation." In light of the evidence presented against petitioner at the State Bar hearing, these deletions appear to reflect judgments by the hearing panel as to which mitigating circumstances were true.

It is well settled that this court must conduct an independent review of the record. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 121 [202 Cal.Rptr. 349, 680 P.2d 82].) Such a review merits the conclusion that the panel's findings include all mitigating circumstances which are supported by the evidence or are objectively verifiable. Accordingly, these findings will be deemed true.

[3]Petitioner does not challenge the finding of moral turpitude, which was based on the stipulation. While the Health and Safety Code section 11360 offense does not involve moral turpitude as a matter of law (see *In re Kreamer* (1975) 14 Cal.3d 524, 530 [121 Cal.Rptr. 600, 535 P.2d 728]) this court has held that circumstances such as those present here— petitioner's role as a principal rather than an assistant, his motive of financial gain, and his awareness of the illegality of his actions—may justify a finding of moral turpitude. (*Ibid.*)

In *In re Kreamer, supra,* 14 Cal.3d 524, this court ordered three years' probation with no actual suspension for an attorney who had engaged in two separate transactions to distribute large quantities of marijuana. The court noted that the attorney had no prior discipline, that his illegal actions were motivated by a domestic financial crisis, and that he had withdrawn from the practice of law before engaging in the illegal conduct. The offenses were committed during a period of protracted emotional difficulties for which the attorney had received psychiatric counselling. Moreover, the attorney presented extensive and uncontroverted testimony concerning his rehabilitation, his value to the profession, and his past and present good moral character. (*Id.,* at p. 531.)

In *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477], suspension for three years including two years' actual suspension was imposed where the attorney had received no financial gain from a marijuana transaction but had merely assisted a friend in transporting the contraband. The attorney had no prior disciplinary record and cooperated with the authorities upon his arrest. (*Id.,* at pp. 421-422.)

Similarly, in *In re Higbie* (1972) 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97], two years' suspension including one year's actual suspension was held sufficient for an attorney whose involvement in a marijuana importation scheme arose from a desire to help a friend. The friend, who later turned out to be an informer, appeared to the attorney to be in serious financial difficulties. The attorney's continued involvement in the scheme was due chiefly to the informer's prodding. This court noted that the attorney neither received nor expected any financial reward from the transaction and that he had no prior disciplinary record. (*Id.,* at pp. 572-574.)

More on point is *In re Giddens* (1981) 30 Cal.3d 110 [177 Cal.Rptr. 673, 635 P.2d 166]. There, disbarment was found appropriate where the attorney lent substantial sums of money to an acquaintance after learning that the money was used to finance illegal drug transactions. The attorney realized a large profit from these loans. This court noted that he offered no satisfactory explanation for his conduct. He was not suffering from any financial hardship, emotional distress, or alcohol or drug dependency. Further, it was noted that the attorney took no steps to terminate the drug distribution scheme or to inform the authorities about it. (*Id.,* at pp. 115-116.)

In light of these precedents, disbarment is not an excessive sanction in this case. Petitioner's sole apparent motive for the marijuana transaction was financial gain. It is undisputed that he anticipated a substantial profit. He acted on his own initiative and not on behalf of others. He stood willing and able to deliver a large quantity of contraband. These facts, together

with his expressed interest in promoting other illegal transactions, indicate that the marijuana sale was not an isolated incident or aberrational conduct. Furthermore, even though petitioner was not engaged in the full-time practice of law during the drug negotiations, he held himself out as an attorney in these negotiations and claimed to be acting on behalf of clients in at least one of the proposed transactions. (Cf. *In re Kreamer, supra,* 14 Cal.3d at p. 531.)

Most importantly, petitioner's conduct in approaching and conversing with a juror in his trial nearly two years after the marijuana offense illustrates a flagrant disrespect for the judicial system. Even though petitioner did not discuss the merits of his case with the juror, the record amply supports the trial judge's conclusion that petitioner attempted indirectly to influence her. By initiating a friendly conversation, buying drinks, and discussing his personal history and religious beliefs, petitioner attempted to arouse sympathy on his behalf. "The harm inherent in deliberate contact or communication can take the form of subtly creating juror empathy with the party . . . ." (*Rinker* v. *County of Napa* (9th Cir. 1983) 724 F.2d 1352, 1354.)

Petitioner's conduct may in itself have been criminal. (See Pen. Code, § 95.[4]) At the very least, it was grossly unethical. As an attorney, petitioner must have been aware that any outside influences on the jury's deliberative processes are inimical to our system of justice. "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." (*Remmer* v. *United States* (1954) 347 U.S. 227, 229 [98 L.Ed. 654, 656, 74 S.Ct. 450].) ▪ Thus, it is unethical for an attorney to communicate with a juror outside the courtroom during the course of a trial. (Rules Prof. Conduct, rule 7-106(B).[5]) ▪ Petitioner's blatant violation of this rule plainly demonstrates an unfitness to practice law.

Petitioner asks this court to consider a number of mitigating circumstances which are neither reflected in the State Bar's findings nor supported by the

---

[4]Penal Code section 95 declares that "[e]very person who corruptly attempts to influence a juror, or any person summoned or drawn as a juror . . . [b]y means of any communication, oral or written, had with him except in the regular course of proceedings" is guilty of a felony.

[5]Rule 7-106(B) provides that "[d]uring the trial of a case: (1) A member of the State Bar connected therewith shall not communicate directly or indirectly with any member of the jury. (2) A member of the State Bar who is not connected therewith shall not communicate directly or indirectly with a juror concerning the case."

evidentiary record. Alternatively, he requests this court to remand for further proceedings so that he may present mitigating evidence.

Petitioner asserts that his offenses were committed while he was addicted to cocaine and that psychological disturbances caused him to seek self-aggrandizement through criminal activity. In support of these claims, he submits to this court a declaration by a social worker from whom he received counselling between 1981 and 1983.[6] The social worker describes the personality problems which led to petitioner's addiction and criminal behavior. He minimizes the extent of petitioner's actual involvement in criminal activity, and suggests that petitioner exaggerated his ability to deliver contraband to undercover officers. The social worker also asserts that petitioner's rehabilitation, via therapy and religion, has been continuous since the date of his arrest.

■ This court has on occasion considered matters extrinsic to the record which are relevant to an attorney's fitness to practice law. (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 980, fn. 2 [126 Cal.Rptr. 801, 544 P.2d 937] [court considered declaration from psychiatrist not presented to hearing panel]; *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 386, fn. 1 [90 Cal.Rptr. 420, 475 P.2d 652] [court considered new evidence concerning attorney's participation in Alcoholics Anonymous]; but see *Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 797 [205 Cal.Rptr. 834, 685 P.2d 1185]; *In re Bloom* (1977) 19 Cal.3d 175, 180 [137 Cal.Rptr. 168, 561 P.2d 258].) However, the strong preference is for such matters to be submitted to the hearing panel, which is better suited to determine what weight to give them. This preference is particularly strong where, as here, the extrinsic evidence consists of opinions about petitioner's mental attitude, and is based largely on petitioner's own out-of-court statements. Such evidence is virtually impossible to evaluate in the absence of cross-examination.[7]

In any event, the new evidence here does not compel a lesser discipline. The social worker's explanation of the psychological roots of petitioner's conduct fails to demonstrate his present fitness to practice law. ■ "We realize that in many cases psychoneurotic problems may underlie professional misconduct and moral turpitude. In this area our duty lies in the assurance that the public will be protected in the performance of the high duties of the attorney rather than in an analysis of the reasons for his delinquency. Our primary concern must be the fulfillment of proper professional

---

[6]The evidentiary hearings before the State Bar were held during 1982.

[7]It should be noted that several mitigating circumstances proffered in the social worker's declaration were also recited in the first stipulation, but omitted from the hearing panel's findings of fact concerning mitigation. This omission appears to be intentional. (See fn. 2, *ante.*)

standards, whatever the unfortunate cause, emotional or otherwise, for the attorney's failure to do so." (*Grove* v. *State Bar* (1967) 66 Cal.2d 680, 685 [58 Cal.Rptr. 564, 427 P.2d 164].)

Petitioner's action in obtaining counselling for his problems in 1981 through 1983 must be acknowledged as a mitigating circumstance. However, his social worker's assertion that petitioner understands and has corrected those problems lacks persuasive force. The declaration speaks only in conclusory fashion of petitioner's "recovery" and offers no factual basis for this court to find a demonstrated fitness to practice law.[8]

■ Nor do petitioner's youth and inexperience mitigate his actions. Thousands of young and inexperienced attorneys begin practice each year, yet few of them engage in large-scale drug transactions or in ex parte communications with jurors sworn to decide their fate. (See *In re Petty* (1981) 29 Cal.3d 356, 361 [173 Cal.Rptr. 461, 627 P.2d 191].) Furthermore, youth and inexperience at the time of the offenses do not establish petitioner's present fitness to practice law, which is the controlling consideration in these proceedings. (*Ibid.*)

■ For the same reason, the passage of time and petitioner's abstention from the practice of law during some of the intervening years do not, standing alone, justify discipline short of disbarment. Such factors are persuasive only where there is substantial evidence that petitioner has used the time to rehabilitate himself and has regained his fitness to practice. (See *In re Dedman* (1976) 17 Cal.3d 229, 233-234 [130 Cal.Rptr. 504, 550 P.2d 1040]; *In re Cadwell* (1975) 15 Cal.3d 762, 772-773 [125 Cal.Rptr. 889, 543 P.2d 257]; but see conc. and dis. opn. of Wright, C. J., *id.,* at p. 773.) Here, petitioner presented no evidence at all on this issue to the hearing panel, and the evidence presented to this court is insufficient. Petitioner's volunteer work in 1979 and 1980 is commendable. However, it sheds little light on the critical question of present fitness to practice law.

## II.

On this record, it does not appear that the objective of protecting the public, the courts, and the legal profession can be met "unless petitioner is required to undergo the evaluation process of a proceeding for reinstatement before he is again permitted to practice law. [Fn. omitted.]" (*In re Duggan*

---

[8]The social worker's further assertion that petitioner has never wavered in his commitment to recovery from the time of his arrest is seriously undermined by petitioner's conduct in approaching the juror two years after the arrest. This conduct also suggests that no mitigating weight should be given to the psychological assistance which petitioner apparently received in 1976 and 1977, as this counselling evidently accomplished little.

(1976) 17 Cal.3d 416, 424 [130 Cal.Rptr. 715, 551 P.2d 19]; see also *In re Petty, supra,* 29 Cal.3d at p. 362; *In re Cadwell, supra,* 15 Cal.3d at p. 773 (conc. and dis. opn. of Wright, C. J.).)

Accordingly, it is ordered that Regis Michael Possino be disbarred from the practice of law and that his name be stricken from the roll of attorneys. In addition, it is ordered that he comply with rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after this opinion becomes final.