*51
 
 Opinion
 

 THE COURT.
 

 The Review Department of the State Bar Court has recommended that petitioner, Thomas M. Slaten, be disbarred from the practice of law in California. Petitioner presents a number of contentions but all hinge on his assertion that he was incompetent and unable to assist in his defense during a substantial portion of these proceedings. As we shall explain, our review of the record of these proceedings leads us to conclude that there is insufficient evidence to support this assertion and consequently that petitioner’s contentions are lacking in merit. We will adopt the review department’s findings and impose the recommended discipline.
 

 A.
 
 The Proceedings.
 

 The present proceeding consists of three consolidated cases. Notices to show cause were issued on August 23, 1982, in case numbers 82-0-114 LA and 82-0-115 LA. Petitioner was personally served with these notices at his residence on November 10, 1982. On February 1, 1983, petitioner filed an answer in propria persona in case number 82-0-114 LA, essentially admitting the conduct alleged but denying it was willful and alleging in mitigation a physical condition which resulted in petitioner’s undergoing a lumbar myelogram, lumbar fusion and laminectomy. No answer was filed in case number 82-0-115 LA. On February 3, 1983, petitioner agreed to refrain from the practice of law until conclusion of the trial in these matters. The trial was set for April 13, 1983.
 

 On March 11, 1983, a notice to show cause issued in case number 83-0-41 LA. Attached to the notice to show cause was a notice of hearing advising petitioner, inter alia, that counsel would be appointed to represent him upon an adequate showing of indigency, that applications for appointment of counsel should be submitted within 30 days of receipt of the notice, and that application forms could be obtained from the office of the State Bar. Petitioner was personally served with this notice at the office of the State Bar on March 15, 1983. No answer was filed in case number 83-0-41 LA.
 

 On April 12, 1983, petitioner executed and thereafter submitted a resignation as a member of the State Bar. Because of the resignation, the three pending matters were ordered abated.
 

 On December 5, 1984, petitioner revoked and withdrew his resignation. On January 29, 1985, the abatement was terminated and the three consolidated matters were ordered to be set for formal hearing. On June 18, 1985, six days before the scheduled hearing, a letter was sent to the State Bar Court by Donald H. Naftulin, M.D., expressing doubts about petitioner’s
 
 *52
 
 ability to represent himself at the upcoming hearing.
 
 [1]
 
 On June 21, 1985, the hearing was continued until October 21, 1985.
 

 In August 1985 petitioner sent a letter to the State Bar Court stating he had previously expressed a need for appointed counsel but had received no communication from any proposed appointed counsel or from the State Bar Court regarding the procedures and forms for obtaining appointed counsel. Petitioner requested a written response. On October 1, 1985, the State Bar received another letter from petitioner. In this communication petitioner stated he had received no reply to his earlier letter, advised that he would be leaving Los Angeles and would not return until October 8th or 9th, and insisted he would need “at least 45 additional days & a prompt reply to my earlier letter.” The record does not show a reply to either letter.
 

 Hearings were held on October 21, 1985, and December 5, 1985, before a hearing panel of the State Bar Court consisting of a single referee. Petitioner did not appear at the hearings either personally or through counsel. On June 3, 1986, the hearing panel issued its decision which, as noted, found petitioner had committed numerous acts of misconduct and recommended disbarment.
 

 On June 30, 1986, petitioner submitted a petition for review and request for extension of time to apply for a hearing de novo. Petitioner thereafter submitted declarations stating that at the time of the original hearing he had been disabled and was unable to attend, that no counsel had been appointed to represent him even though he could not afford counsel and had requested appointment of counsel, that a review of the State Bar files indicated that he had not received important mail because it was misaddressed or misdelivered,
 
 [2]
 
 that he intended to retain Theodore Cohen to represent him, and that he intended to obtain evidentiary support for his claim of disability from Dr. Donald Naftulin.
 

 Petitioner thereafter submitted a letter from Dr. Naftulin stating that he had seen petitioner on June 18, 1985, December 10, 1985, and June 25, 1986. In the opinion of Dr. Naftulin, petitioner, because of his mental status, was not capable of representing himself on the first two dates, but
 
 *53
 
 did appear capable of acting in his own defense when seen on the third occasion.
 
 [3]
 

 Petitioner’s application for extension of time to apply for a hearing de novo was denied on July 10, 1986. On August 11, 1986, Theodore Cohen, appearing on behalf of petitioner, filed another request for review of the proceedings and decision of the hearing panel, and a request for reconsideration of the denial of the application for hearing de novo. Petitioner contended that the recommended discipline was excessive in light of the record, in light of the evidence of petitioner’s mental illness at the time of the offenses, and in light of petitioner’s subsequent rehabilitation. Petitioner also cited the failure to appoint counsel to represent him and his nonreceipt of notices which were improperly addressed.
 

 The matter was argued before the review department on January 20, 1987. Petitioner was represented by his retained counsel, Theodore Cohen, who argued that petitioner had been incapacitated by depression during the hearings and therefore incompetent to represent himself or to take the necessary steps to have counsel appointed for him. He stated that petitioner’s withdrawal of his resignation was an act of frustration and anger and he requested leave to withdraw the withdrawal, thereby reinstating the resignation effective on the date it was first submitted.
 

 On March 19, 1987, the review department, by a vote of eight to three, adopted the referee’s recommendation that petitioner be disbarred. The dissenters voted against the recommendation on the ground petitioner had been denied the assistance of counsel.
 

 Petitioner later submitted a resignation with a purported effective date of April 12, 1983, but the State Bar Court has refused to process the resignation and has informed petitioner that the backdated resignation is invalid.
 

 B.
 
 Petitioner’s Alleged Incompetence.
 

 Petitioner contends that, from the time the notices to show cause were issued until the conclusion of the trial before the hearing panel, he was
 
 *54
 
 suffering from a mental disease or disorder which made him unable to assist in. his own defense. He maintains that the letters from Dr. Naftulin provided sufficient notice to the State Bar of this condition and that the State Bar therefore should have (1) appointed counsel for petitioner to assist in determining his competency, (2) initiated inactive status proceedings under Business and Professions Code section 6007, subdivision (b), (3) abated the current disciplinary proceedings, and (4) voided the withdrawal of petitioner’s resignation. He also maintains that imposing discipline on an attorney who was incompetent and unrepresented during crucial stages of the disciplinary proceedings results in a denial of due process.
 

 To assess the merits of petitioner’s arguments, it is necessary to review briefly the statutory and decisional law relating to the institution of inactive status proceedings and the abatement of disciplinary proceedings on grounds of the accused attorney’s mental illness. We will conclude that petitioner failed to establish grounds for abatement of the disciplinary proceeding and that, while grounds for investigating the existence of probable cause for inactive status proceedings did exist, the State Bar’s failure to conduct such an investigation did not constitute an abuse of discretion.
 

 Business and Professions Code section 6007, subdivision (b)(3), provides a procedure for enrolling as an inactive member an attorney who is “unable or habitually fails to perform his or her duties or undertakings competently” or is “unable to practice law without danger to the interests of his or her clients and the public.” Proceedings under this subdivision are formally initiated by a notice to show cause which may be issued only
 
 after
 
 a finding of probable cause by a referee or by the hearing panel in a disciplinary proceeding. (Bus. & Prof. Code, § 6007, subd. (b)(3); rule 642(A), Rules Proc. of State Bar.)
 

 The pendency of an inactive status proceeding or investigation does not require abatement of the disciplinary proceeding unless the attorney, “because of the disability or alleged disability, is unable to assist in the defense of the disciplinary investigation or formal proceeding.” (Rule 645, Rules Proc. of State Bar; see also, Bus. & Prof. Code, § 6007, subd. (e);
 
 Ballard
 
 v.
 
 State Bar
 
 (1983) 35 Cal.3d 274, 286 [197 Cal.Rptr. 556, 673 P.2d 226].) “Inability to assist in the defense should be distinguished from inability to practice competently and without endangering clients or the public. The former suggests a more serious form or degree of mental illness than the latter. Accordingly, facts sufficient to support a finding of probable cause to institute inactive status proceedings under section 6007, subdivision (b) may not be sufficient to support abatement of a disciplinary proceeding.”
 
 (Ballard, supra,
 
 at p. 286, fn. 22.)
 

 
 *55
 
 As this court also noted in
 
 Ballard-.
 
 “It may well be an abuse of discretion rising to the level of a violation of due process for the State Bar to fail to abate a disciplinary proceeding when presented with substantial indications that an attorney is incompetent to assist in the defense of the proceeding.”
 
 {Ballard, supra,
 
 35 Cal.3d at p. 286, fn. 22.)
 

 In support of his claim of mental incompetence and inability to assist in his own defense, petitioner relies on three letters from Dr. Naftulin. Two of these letters have been previously mentioned and have been quoted in the margin. The third letter was submitted in 1981 in connection with an earlier disciplinary proceeding and in it Dr. Naftulin stated that petitioner was anxious about impending surgery on his back; the doctor recommended that the State Bar hearing be “continued until a few weeks after his 2/27/81 lumbar laminectomy.”
 

 These letters, considered in the context of the existing record, did not provide the State Bar with a substantial indication that petitioner was unable to assist in his own defense in the disciplinary proceeding. At most the letters suggest an inability to practice competently and therefore to represent himself in the disciplinary proceeding rather than the more serious form of mental illness that would render petitioner unable to assist in his defense and to take the steps necessary to obtain representation. The letter submitted by Dr. Naftulin in 1981 indicated only that petitioner was experiencing anxiety as a result of impending surgery and the ongoing disciplinary proceedings. Dr. Naftulin did not suggest that petitioner’s condition was seriously disabling and the doctor recommended only that the disciplinary hearing be continued until after petitioner’s surgery, when he presumably would be capable of representing himself competently.
 

 The very brief letter which Dr. Naftulin sent to the State Bar Court in June 1985 did not indicate the nature of the examination or testing conducted by Dr. Naftulin, if any, the symptoms of petitioner’s condition, the diagnosis of that condition, the cause of the condition, or any past or proposed treatment. The value of an expert’s opinion depends on the quality of the information and reasoning which the expert has used to arrive at his or her conclusions.
 
 (People
 
 v.
 
 Samuel
 
 (1981) 29 Cal.3d 489, 498 [174 Cal.Rptr. 684, 629 P.2d 485].) Here Dr. Naftulin’s letter disclosed neither the data nor the reasoning upon which his opinion was based and so the opinion was entitled to little consideration. (See also,
 
 In re Possino
 
 (1984) 37 Cal.3d 163, 171 [207 Cal.Rptr. 543, 689 P.2d 115] [opinion evidence regarding an individual’s mental condition “is virtually impossible to evaluate in the absence of cross-examination.”].) Even if these deficiencies are ignored, the letter is still insufficient, because Dr. Naftulin did not indicate that petitioner was suffering from a form of mental illness sufficiently serious to
 
 *56
 
 raise doubts about petitioner’s ability to assist in his own defense. The letter stated that petitioner did not appear able to represent himself but did not state that he would be unable to assist in his own defense.
 

 Essentially the same observations apply to Dr. Naftulin’s July 1986 letter. The only opinion offered was that petitioner had been unable to represent himself in July and in December of 1985, and this opinion was not adequately supported by a statement of the data or reasoning used to form it. The letter refers vaguely to petitioner’s depression, anger, poor organization, and passive-aggressive behavior. This description does not provide notice of a condition serious enough to impair petitioner’s ability to assist in his own defense.
 

 These letters must be viewed in the context of the record of the disciplinary proceedings. Nothing in petitioner’s answer to the notice to show cause in case number 82-0-114 LA or in any of petitioner’s written communications with the State Bar Court provided notice that petitioner was suffering from a serious mental impairment. These facts distinguish this case from
 
 Newton
 
 v.
 
 State Bar
 
 (1983) 33 Cal.3d 480 [189 Cal.Rptr. 372, 658 P.2d 735], cited by petitioner, in which serious questions regarding the attorney’s mental condition were “amply confirmed” (at p. 484) by his written submissions and oral argument. It is significant also that petitioner was able to consult Dr. Naftulin in June 1985, and again in December 1985, apparently for the express and sole purpose of obtaining his opinion as the basis for seeking a continuance. These actions demonstrate petitioner’s ability to take intelligent and purposeful action and thus to assist in his own defense.
 

 Finally, we note that even after obtaining the assistance of counsel to represent him, petitioner has supplied no additional evidence to indicate he was previously so impaired by mental illness as to be unable to assist in his own defense.
 
 [4]
 
 He has not provided a full psychiatric report of his condition relating that condition to any recognized legal definition of competency (e.g., Pen. Code, § 1367). Accordingly, we conclude the State Bar Court did not abuse its discretion in failing to abate the disciplinary proceedings or to conduct an inquiry into petitioner’s competence to assist in his own defense.
 

 As noted, Dr. Naftulin’s letters provided some indication that petitioner may have been incompetent, by reason of mental illness, to represent
 
 *57
 
 himself or others and thus an investigation to determine whether probable cause existed to institute inactive status proceedings would not have been improper.
 
 [5]
 
 However, the decision whether to conduct a formal investigation to determine the existence of probable cause to institute an inactive status proceeding “is left to the discretion of the State Bar.”
 
 (Ballard, supra,
 
 35 Cal.3d at p. 287.) Given the very weak showing in this case, we cannot say that the State Bar abused its discretion in failing to institute inactive status proceedings.
 
 [6]
 

 C.
 
 Related Contentions.
 

 Petitioner contends that counsel should have been appointed to represent him. As noted, petitioner received a notice of hearing informing him that counsel would be appointed for him upon a sufficient showing of indigency and that forms were available for this purpose at the office of the State Bar. Because petitioner never submitted the required form, no determination of indigency was made and counsel was not appointed.
 

 An attorney in a disciplinary proceeding is entitled to a reasonable opportunity and right to be represented by counsel (Bus. & Prof. Code, § 6085) but it is the attorney’s responsibility to take the steps necessary to obtain representation.
 
 (Palomo
 
 v.
 
 State Bar
 
 (1984) 36 Cal.3d 785, 792 [205 Cal.Rptr. 834, 685 P.2d 1185]; see also,
 
 Dixon
 
 v.
 
 State Bar
 
 (1985) 39 Cal.3d 335, 341-343 [216 Cal.Rptr. 432, 702 P.2d 590] [review department’s failure to appoint counsel not abuse of discretion where attorney delayed unreasonably in seeking appointment and failed to show entitlement].) Although State Bar proceedings are said to be quasi-criminal in nature, an accused attorney is not entitled to all the rights afforded a criminal defendant.
 
 (Frazer
 
 v.
 
 State Bar
 
 (1987) 43 Cal.3d 564, 567 [238 Cal.Rptr. 54, 737 P.2d 1338].) An accused attorney must assume responsibility not only for obtaining representation but also for appearing at the hearing and presenting evidence in defense; the voluntary absence of an accused attorney from the hearing is not grounds for a rehearing.
 
 (Palomo, supra,
 
 at p. 792.)
 

 At the hearing before the review department, the examiner for the State Bar stated that the hearing panel had continued the trial of this matter for
 
 *58
 
 the express purpose of allowing petitioner additional time to obtain either retained or appointed counsel and that on at least one occasion an employee of the State Bar attempted to assist petitioner in filling out an application for appointed counsel but that petitioner had never submitted a completed application form. Petitioner’s counsel did not contest the truth of these statements; rather, he argued that petitioner had been depressed at the time and that petitioner’s mental condition provided a sufficient excuse for this failure to submit a completed application form for appointment of counsel or to locate and retain an attorney to represent him.
 

 As noted above, there is no substantial indication in the record that petitioner’s alleged mental illness was so severe that he was unable to assist in his own defense and, in particular, to obtain legal representation. It appears that petitioner received ample opportunity to hire an attorney or, if he was indigent, to establish this fact and to have counsel appointed for him. He received ample notice of the procedure for obtaining appointment of counsel. He knew it was necessary to submit an application and he received assistance in completing the form yet he failed to file a completed application form.
 

 Petitioner argues that his letter to the State Bar Court of August 23, 1985, in which he expressed a need for appointed counsel and ignorance of the procedure for obtaining appointed counsel, should have been treated as an application for counsel or at least should have prompted a response explaining the correct application procedure.
 

 Given the information provided in the notice to show cause and the undisputed statement of the examiner that petitioner was provided with an application form and with assistance in its completion, petitioner’s assertion of ignorance appears to have been disingenuous. Assuming there was no reply to petitioner’s letter the lack of a reply did not have the effect of shifting the responsibility for obtaining counsel to the State Bar Court. It was petitioner’s responsibility at all stages to exercise diligence in obtaining representation
 
 (Yokozeki
 
 v.
 
 State Bar
 
 (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858]) and he did not do so. The failure to appoint counsel for petitioner under these circumstances was not an abuse of discretion nor did it deny him due process of law or his statutory right under section 6085 of the Business and Professions Code to a reasonable opportunity to be represented by counsel.
 

 Petitioner contends that the examiner should have directed the hearing panel’s attention to petitioner’s letter, received on October 1, 1985, in which petitioner requested “at least 45 additional days and a prompt reply to my earlier letter.” This is another instance in which petitioner attempts to shift
 
 *59
 
 responsibility for his own lack of diligence onto the State Bar Court. If petitioner desired another continuance and had valid grounds for requesting one, it was his responsibility, at a minimum, to appear at the hearing and to present his request to the hearing panel. As noted, moreover, petitioner had already received a substantial continuance; his letter failed to provide any grounds for another. There is no reasonable possibility another continuance would have been granted had the letter been expressly called to the attention of the hearing panel.
 

 Next petitioner complains that no answer was received to a letter sent by his counsel, in preparation for the review department proceeding, to an examiner for the State Bar Court who had been assigned to petitioner’s case during its early stages. The letter asked the examiner for a declaration setting forth her memory of the events relating to petitioner’s case. Petitioner argues that the examiner was a party to communications with petitioner and thus was in a position to observe signs of mental impairment.
 

 The examiner’s failure to reply to this letter affords no basis for providing relief to petitioner. There is no indication that petitioner’s counsel has interviewed the examiner or has made any other reasonable efforts to secure evidence from the examiner or to determine what her recollections may be. Nor has petitioner shown that his mental condition could not be established by other means. Petitioner has provided no declaration setting forth his own recollections, he has not provided substantial expert opinion evidence, and he has not provided declarations from any of the other persons with whom he was in contact during the time in question.
 

 Petitioner contends that he should have been permitted to revoke the withdrawal of his resignation, thereby reinstating the resignation as of the date it was submitted, in April 1983, and permitting the five-year waiting period "before application for reinstatement (rule 662, Rules Proc. of State Bar) to be calculated from that date. In the absence of a showing that petitioner was incompetent when he withdrew the resignation, there is no basis upon which it can be voided and the resignation reinstated. Obviously, an attorney who is the subject of disciplinary proceedings cannot be permitted to gamble on a favorable outcome of those proceedings and then avoid the consequences of a disbarment recommendation by reinstating an earlier resignation. For the same reason, we must reject defendant’s request that he be given credit against the five-year period noted above for the time during which he has been inactive.
 
 [7]
 

 
 *60
 
 D.
 
 Findings and Conclusions.
 

 The following is a summary of the hearing panel’s findings and conclusions, which were adopted without change by the review department. Petitioner does not contend that the findings are unsupported by the evidence and we adopt them. They are recited here in connection with our responsibility to determine the appropriateness of the recommended discipline.
 

 State Bar Court Case Number 82-0-114 LA (LA 3591).
 

 Petitioner was admitted
 
 to
 
 the practice of law on December 16, 1975.
 

 Count One.
 
 In June 1979, Arnold Samberg retained petitioner to represent him in a medical malpractice action. Petitioner filed a complaint and first amended complaint but thereafter, for approximately five months, willfully failed and refused to perform further services, to communicate with Samberg concerning the status of the case, to execute a substitution of attorney, and to turn over the case file to the succeeding attorney.
 

 Count Two.
 
 In August 1976, petitioner was appointed to serve as executor of a decedent’s estate and also became the attorney of record for the estate. The final account was approved in May 1979, but thereafter petitioner willfully failed and refused to disburse the estate’s assets to the beneficiaries and willfully commingled estate funds with his own.
 

 Count Three.
 
 In October 1977, petitioner was employed by Robert J. Lieb and Cyril Chern to represent them in a civil action. Petitioner willfully failed and refused to perform all of the services for which he was retained by Lieb and Chern, to communicate with Lieb, and to appear at a court hearing on behalf of Lieb and Chern, resulting in dismissal of their action. Lieb retained a new attorney, after which petitioner willfully failed and refused to execute a substitution of attorney and to promptly deliver the case file upon request.
 

 As to each of these counts, the hearing panel found that petitioner had willfully failed and refused to use reasonable diligence, to exercise his best judgment, and to apply his learning in an effort to accomplish the purpose for which he was retained.
 

 
 *61
 

 State Bar Court Case Number 82-0-115 LA (LA 3593).
 

 In September 1978, petitioner was employed by Thomas Craft, pursuant to a written retainer agreement, to represent Craft in a pending civil action against, inter alia, Lyon Moving and Storage. Petitioner willfully failed and refused to perform any services on behalf of Craft and to communicate with Craft concerning the status of the case despite Craft’s numerous attempts to communicate with petitioner.
 

 State Bar Court Case Number 83-0-41 LA (LA 3713).
 

 Count One.
 
 Robert Younger employed petitioner in January 1979 to prepare and handle a naturalization application with the United States Immigration and Naturalization Service on behalf of Younger’s wife. For this purpose, Younger gave his wife’s passport to petitioner. From January 1979 until June 1981, petitioner repeatedly told Younger that petitioner had filed an application for citizenship for Younger’s wife. This representation was false and known by petitioner to be false and no application was ever filed by petitioner. When Younger hired new counsel to file the application, petitioner willfully failed and refused to turn over the case file and Younger’s wife’s passport.
 

 Count Three.
 

 [8]
 

 In August 1981, petitioner represented Thomas A. Hob-son, D.C., in a civil dispute with tenants of commercial property owned by Hobson. Although petitioner knew that the court had denied his ex-parte motion for an injunction, and was aware that Hobson had no legal right to enter the leased premises, he nonetheless advised Hobson to enter the premises, thereby willfully advising Hobson to act in violation of the law. Hob-son’s employees were interrupted by police officers while in the process of removing the tenants’ property from the premises.
 

 Count Four.
 
 In August 1979, petitioner was employed by Donald Kent to sue Kent’s former employer for breach of contract. Petitioner willfully failed to file the action until June 1980, and thereafter willfully failed to perform any further services with respect to the action, to respond to Kent’s inquiries, and to deliver the case file to the attorney subsequently hired by Kent.
 

 Count Five.
 
 In February 1980, Donald Kent employed petitioner to represent him in a claim for personal injuries arising out of an automobile accident. Petitioner filed a complaint and a request for default but thereafter
 
 *62
 
 petitioner willfully failed to perform any further services and failed to communicate with Kent.
 

 Conclusions of Law.
 

 Petitioner has engaged in acts of willful misconduct in violation of his oath and duties as an attorney within the meaning of Business and Professions Code section 6103 as the same are prescribed by Business and Professions Code sections 6067 and 6068, has willfully violated rules 2-111, 6-101, 7-101, and 8-101 of the Rules of Professional Conduct of the State Bar, and has committed acts involving moral turpitude and dishonesty within the meaning of Business and Professions Code section 6106.
 

 Prior Discipline.
 

 State Bar Court Case Number 80-0-224 LA.
 
 In October 1981 petitioner was publicly reproved following a decision finding he had violated rule 7-105 of the Rules of Professional Conduct by making representations he knew to be false to a judge for the purpose of misleading the judge.
 

 State Bar Court Case Number 80-0-40 LA (Bar Mise. 4500).
 
 In July 1982, petitioner was suspended from the practice of law for one year, the suspension was stayed, and he was placed on probation for one year pursuant to findings that he had willfully violated rules 6-101 and 8-101 of the Rules of Professional Conduct by failing to perform services or communicate with a client concerning the status of a dissolution of marriage, and willfully failed to account to the client for funds received by petitioner in trust from the sale of the family residence.
 

 State Bar Court Case Number 81-0-89 LA (Bar Mise. 4555).
 
 In December 1982, petitioner was suspended from the practice of law for two years, the suspension was stayed, and he was placed on probation with a three-month actual suspension pursuant to findings that he willfully violated rules 6-101 and 2-111 of the Rules of Professional Conduct by failing to perform services for and to communicate with a client, and by failing to turn over the case file to succeeding counsel.
 

 State Bar Court Case Number 83-P-15 LA (Bar Mise. 4555).
 
 In July 1985, petitioner’s probation was revoked for failure to comply with a probation condition requiring him to file quarterly reports. Petitioner was placed on actual suspension for two years and ordered to comply with rule 955 of the California Rules of Court.
 

 State Bar Court Case Number 82-P-24 LA (Bar Mise. 4500).
 
 In this case also, petitioner’s probation was revoked for failure to file quarterly reports,
 
 *63
 
 and in December 1985 he was placed on actual suspension for one year, consecutive to the two-year suspension noted above.
 

 E.
 
 Discipline.
 

 It does not appear that the recommendation of disbarment is unwarranted. While we exercise our own judgment in determining the appropriate discipline, we attach great weight to the disciplinary recommendation of the review department.
 
 (Cooper
 
 v.
 
 State Bar
 
 (1987) 43 Cal.3d 1016, 1028 [239 Cal.Rptr. 709, 741 P.2d 206].)
 

 The combined record of this disciplinary proceeding and the prior ones noted above demonstrates a continuing course of serious professional misconduct extending over a period of years. A demonstrated pattern of willfully failing to perform services amounting to abandonment of clients warrants disbarment. (Rules Proc. of State Bar, div. V, Standards for Atty. Sanctions for Prof. Misconduct, std. 2.4(a);
 
 Kent
 
 v.
 
 State Bar
 
 (1987) 43 Cal.3d 729, 735 [239 Cal.Rptr. 77, 739 P.2d 1244].)
 

 Petitioner’s alleged mental problems, even if they had been sufficiently established, would be entitled to little weight in mitigation of his numerous acts of misconduct. The purpose of disciplinary proceedings is the protection of the public and the need for protection is the same whether or not the attorney is mentally impaired.
 
 (Hyland
 
 v.
 
 State Bar
 
 (1963) 59 Cal.2d 765, 774 [31 Cal.Rptr. 329, 382 P.2d 369].) Thus our focus must be on assurance of high professional standards, whatever the unfortunate causes, emotional or otherwise, of an attorney’s failure to meet those standards.
 
 (Snyder
 
 v.
 
 State Bar
 
 (1976) 18 Cal.3d 286, 293 [133 Cal.Rptr. 864, 555 P.2d 1104].)
 

 Accordingly, it is ordered that petitioner Thomas M. Slaten be disbarred from the practice of law and that his name be stricken from the roll of attorneys, with this court’s order to be effective upon finality of this decision.
 
 [9]
 

 Petitioner’s application for a rehearing was denied October 13, 1988, and the opinion was modified to read as printed above.
 

 [1]
 

 The entire text of the letter reads: “This patient was seen today in consultation and it is recommended that he not undergo an administrative hearing June 24, 1985 given his current mental status. Based on what he has told me it is not likely he could have represented himself at the hearing of June 14, 1985.” The hearing of June 14, 1985, was apparently a hearing in a prior case.
 

 [2]
 

 No contention is raised before this court that petitioner failed to receive important notices.
 

 [3]
 

 The text of this letter reads: “As I indicated in my 6/18/85 letter to Clifford Anderson when I saw this patient on that date, he was not capable of undergoing a 6/24/85 hearing because of his mental status. It was unlikely he could have represented himself four days earlier on 6/14/85.
 

 “When the patient was seen 12/10 85 he was also less depressed, more angry but demonstrating poor organization and marked passive-aggressive behavior. At that time, too, I did not feel he was capable of acting in his own defense.
 

 “As of 6/25/86 he had married, obtained a job administering board and care facilities, was much more appropriate and considerably less depressed, denying sleep disturbance, diarrhea and rapid heart rate. The last medication he had taken was four weeks before this most recent examination. At this time he appears capable of acting in his own defense.”
 

 [4]
 

 This court has on occasion considered matters outside the record although our strong preference is to have all evidence submitted first to the hearing panel.
 
 (In re Possino, supra,
 
 37 Cal.3d 163, 171.) Thus there is no absolute procedural bar to the presentation, by appropriate motion, of additional evidence to the Review Department of the State Bar Court or to this court.
 

 [5]
 

 Petitioner claims he was prejudiced by the failure to institute inactive status proceedings, even without an abatement of the disciplinary proceedings, because the State Bar would have been required to appoint counsel for him had inactive status proceedings been instituted (rule 641, Rules Proc. of State Bar) and this appointed counsel could have assisted him in defending the disciplinary proceeding.
 

 [6]
 

 At the review department hearing the examiner stated that instituting inactive status proceedings had been considered and rejected by the State Bar at an early stage. While the examiner did not state the reasons for the decision, it may well have been influenced by defendant’s voluntary agreement not to practice and the subsequent orders in prior disciplinary proceedings placing him on actual suspension. Because petitioner would not be practicing law anyway, placing him on inactive status was not necessary for protection of the public.
 

 [7]
 

 The five-year period runs from “the effective date of interim suspension or disbarment or resignation whichever first occurred.” (Rule 662, Rules Proc. of State Bar.) The term “interim suspension” is not defined but apparently refers to temporary suspension following criminal conviction (Bus. & Prof. Code, § 6102;
 
 In re Strick
 
 (1983) 34 Cal.3d 891, 898 [196
 
 *60
 
 Cal.Rptr. 509, 671 P.2d 1251]) and not to a suspension in a prior disciplinary proceeding. However, on good cause shown the time to petition for reinstatement may be shortened to not less than three years. (Rule 662, Rules Proc. of State Bar.)
 

 [8]
 

 Count Two was dismissed pursuant to the hearing panel’s finding of insufficient factual basis.
 

 [9]
 

 Because petitioner was ordered to comply with the requirements of rule 955 of the California Rules of Court when he was previously suspended from the practice of law, and because he has not practiced since, we do not include in our order a requirement of compliance with rule 955. (See
 
 Bambic
 
 v.
 
 State Bar
 
 (1985) 40 Cal.3d 314, 326, fn. 17 [219 Cal.Rptr. 489, 707 P.2d 862].)